UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John Doe,                              :
      Plaintiff,                       :
                                       :
      v.                               : File No.1:03-CV-211
                                       :
The Newbury Bible Church,              :
The Newbury Christian School,          :
The Newbury Bible Church and           :
School, and Joseph Rinaldi,            :
      Defendants.                      :

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
(Paper 25)

Plaintiff John Doe filed this diversity action against Defendants the Newbury Bible Church, the Newbury Christian School and the Newbury Bible Church and School (collectively "the church defendants") as well as Joseph Rinaldi.  Doe seeks damages from the church defendants arising from Rinaldi's molestation of Doe, based on theories of respondeat superior, breach of fiduciary duty, negligent supervision, and negligent hiring and retention.  Doe also seeks punitive damages from the church defendants.  The case is currently before this Court on the church defendants' motion for summary judgment.

For the following reasons, I recommend that the church defendants' motion for summary judgment (Paper 25) be

GRANTED.[1]

## Background

The following facts are undisputed.[2]  Rinaldi was
pastor of the Newbury Bible Church from the early 1970s
until December 2001.  (Paper 26, ¶ 1).  The Newbury
Christian School was part of the Newbury Bible Church, not a
separate entity.  (Id. at ¶ 3; Paper 28, ¶ 3).  Rinaldi's
wife, Judith, was involved in the administration of the
school, sometimes as its principal.  (Paper 26, ¶ 3; Paper
28, ¶ 1A).  Doe's father and stepmother attended the Newbury
Bible Church, and Doe attended the Newbury Christian School
from the third grade until the beginning of his ninth grade
year.  (Paper 26, ¶¶ 8 & 9).

In addition to knowing each other from church, Doe's
father and stepmother were personal friends of Rinaldi and
his wife.  (Id. at ¶ 10).  At Doe's stepmother's request,
the Rinaldis would babysit Doe and his sister, and gave Doe

---

[1] If the Court adopts this Report & Recommendation, the
only remaining claim would be Count I, the direct liability
claim against Defendant Rinaldi, who has not appeared in
this action.

[2] In his statement of disputed material facts, Doe only
responded to those facts in the church defendants' statement
of undisputed material facts with which he disagreed.  As
such, any statements to which Doe did not respond are deemed
admitted.  See L.R. 7.1(c)(3).

rides home from school or soccer practice. (Id. at ¶ 11).
When Doe was in the seventh grade, his parents sent him to
Mexico with the Rinaldis. (Id. at 12).

On at least four occasions, Rinaldi fondled Doe
inappropriately. (Id. at ¶ 14). The first instance took
place at Rinaldi's office at the church. (Id. at ¶ 15).
The second instance took place in Rinaldi's car, as he drove
Doe home from soccer practice. (Id. at ¶ 16). The third
and fourth instances took place at the Rinaldi's house,
which was also the church parsonage. (Id. at ¶¶ 17-18).
Doe never told any adult at the church or school, including
his parents, about the molestation. (Id. at ¶ 19).

When the allegations against Rinaldi finally came to
light after Doe had moved away, the Newbury Bible Church and
Newbury Christian School immediately barred Rinaldi from
church grounds and later revoked Rinaldi's ordination. (Id.
at ¶ 22). Rinaldi later pled guilty to three counts of lewd
and lascivious conduct with a minor. (Id. at ¶ 21). There
is no evidence that Rinaldi had a prior criminal record or
background of sexual abuse of children.[3] (Id. at ¶ 25).

---

[3] In his Statement of Disputed Facts, Doe purports to
dispute this statement. He concedes that Rinaldi has no
criminal record, but states that Rinaldi does have "a
'background' of homosexual and/or bisexual conduct from

3

## Summary Judgment Standard

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), or "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 61 (2d Cir. 2002)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"When determining whether there is a genuine issue of

_____

Joseph Rinaldi's youth into Joseph Rinaldi's adulthood." (Paper 28 ¶ 1D). Rinaldi's homosexual or bisexual conduct is not the issue, however, and there is no record evidence that Rinaldi had any background of child molestation at the time he became pastor of the church. In addition, there is no record evidence that the church defendants were aware of a propensity of Rinaldi's to molest children or of any actual acts of molestation before Doe himself came forward after he had moved away.

4

fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." <u>Winter v. United States</u>, 196 F.3d 339, 346 (2d Cir. 1999).  As to any claim or essential element for which the non-moving party bears the burden of proof at trial, the non-moving party must make a showing sufficient to establish the existence of that claim or element. <u>Tops Mkts., Inc. v. Quality Mkts., Inc.</u>, 142 F.3d 90, 95 (2d Cir. 1998)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>DiCola v. Swissre Holding, Inc.</u>, 996 F.2d 30, 32 (2d Cir. 1993)).  "Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion."  <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001).  "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997).

Summary judgment is mandated, however, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  A party is entitled to summary judgment if, based on the evidence, no reasonable jury could find in favor of the non-moving party.  O'Hara, 294 F.3d at 61.

## DISCUSSION

A. <u>Vicarious Liability</u>

The church defendants argue that they are entitled to summary judgment on the vicarious liability count, because Rinaldi's actions were outside the scope of his duties.  Doe urges this Court to expand the Vermont Supreme Court's holding in Doe v. Forest, 176 Vt. 476 (2004).

With certain exceptions, an employer or master may be held vicariously liable for the torts of an employee or servant only when the tortious acts are "committed during, or incidental to, the scope of employment."  Brueckner v. Norwich University, 169 Vt. 118, 122-23 (1999).  Whether the conduct in question is within the scope of employment is generally a question for the finder of fact, as it is a fact intensive inquiry.  Id. at 123.  For conduct to be within the scope of employment, it must be "the same general nature

as, or incidental to, the authorized conduct." Id. Conduct is within the scope of employment when

> (a) it is of the kind the servant is employed to perform; (b) it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the master; and (c) in a case in which the force is intentionally used by the servant against another, it is not unexpectable by the master.

Id.; see also Restatement (Second) of Agency § 228. Conduct which is different from the kind authorized by the employer, far beyond the time and space limits authorized, or "too little actuated by a purpose to serve the master" is not within the scope of employment and does not give rise to liability of the master. Bruekner, 169 Vt. at 123; see also Restatement (Second) of Agency § 228.

Doe can point to no evidence that Rinaldi's actions were within the scope of his employment with the church defendants. Although some of the assaults took place on church grounds, no reasonable jury could find that Rinaldi's actions were either within the scope of his duties or in furtherance of the church defendants' business.

The Vermont Supreme Court recently adopted another basis for vicarious liability. Doe v. Forrest, 176 Vt. at 484-86. Under the Section 219 of the Restatement,

> A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> (a) the master intended the conduct or the consequences, or
>
> (b) the master was negligent or reckless, or
>
> (c) the conduct violated a non-delegable duty of the master, or
>
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relationship.

Restatement (Second) of Agency § 219(2). In Forrest, the Vermont Supreme Court recognized that it had never expressly adopted this provision, but had recognized it in the context of workplace sexual harassment. Forrest, 176 Vt. at 485. In a 3-2 decision, the court then found that § 219 is consistent with Vermont common law, and expressly adopted it "as applicable in assessing whether an employer has vicarious liability for the tortious conduct of an employee when that conduct falls outside the scope of his or her employment." Id. The court went on to limit its holding to situations in which it could be shown that "an on-duty law enforcement officer was aided in accomplishing an intentional tort involving a sexual assault on the plaintiff

8

by the existence of the employment relationship with the law enforcement agency." Id. at 500.

In deciding Forrest, the Vermont Supreme Court went to great lengths to emphasize "the extraordinary power that a law enforcement officer has over a citizen." Id. at 491. In examining decisions from other courts in which police departments were held liable for the torts of law enforcement officers, the court noted that those decisions had relied on that power, as well as the unique access to citizenry provided by virtue of the officer's position, and the fact that citizens are "particularly vulnerable and defenseless" when an officer is a tortfeasor. Id. at 491-95 (citing Mary M. v. City of Los Angeles, 54 Cal. 3d 202, 285 (1991)(en banc); Applewhite v. City of Baton Rouge, 380 So. 2d 119, 121 (La. Ct. App. 1979)). The court then explained that the community should bear the costs of any police misconduct, because the public "derives substantial benefits from the lawful exercise of police power." Id. at 494-95.

This case is distinguishable from Forrest in several key ways. Rinaldi was not a public actor. Although his position within the church gave him some power over his parishioners, especially the schoolchildren, that power is

simply not the same as police power.  To hold otherwise would expand <u>Forrest</u> to apply to any teacher, religious leader, coach, camp counselor, or other adult in a position of authority and influence over a child.  The Vermont Supreme Court intended to limit <u>Forrest</u> to police misconduct, and pointed to California cases which did not apply Section 219 to torts not involving police officers. <u>Id.</u> at 499 (citing <u>John R. v. Oakland Unified School District</u>, 48 Cal. 3d 438 (1989)(declining to apply § 219 in a case involving a teacher's assault on a high school student)).

Even if the Vermont Supreme Court intended to have Section 219 apply in other abuse of power cases, however, it does not follow that it would apply in this case.  Although Rinaldi had some contact with Doe because of his position with the church, he also had contact because of his friendship with Doe's father and stepmother.  Only one of the incidents took place in Rinaldi's office at the church; the other incidents took place in his home and car.  Doe was present in the home and car because his parents had asked that Rinaldi babysit him or drive him home from activities. Even if Doe's parents were more inclined to begin a

friendship with Rinaldi because of his position as pastor, it was their personal relationship with him that gave him the opportunity to molest Doe.  As such, Section 219(2)(d) is not applicable to the majority of the incidents.  Again, the court in <u>Forrest</u> emphasized the unique access that law enforcement officers have to the public, as well as the special power that police officers have over citizens. <u>Forrest</u>, 176 Vt. at 492-93.  If the Court were to adopt Doe's theory in this case, employers would be subject to strict liability for any act of their employees.  I do not believe that this is the result that the Vermont Supreme Court intended in <u>Forrest</u>.  The court went to great lengths to limit the scope of the application of Section 219(2)(d), and application here would expand <u>Doe</u> far beyond those limits.  As such, I recommend that this Court not apply Section 219(d)(2) to this case.

Doe also argues that the church defendants could be liable under Section 219(2)(b), which holds employers liable for torts outside the scope of employment when the employer is negligent or reckless.  The church defendants argue that they were not negligent, because nothing in Rinaldi's background would put the church on notice of the possibility

of him molesting young boys.

The foreseeability of the harm is relevant in determining whether there was a legal duty. See Lexington Ins. Co. v. Rounds, 349 F. Supp. 2d 861, 867 (D. Vt. 2004). The foreseeability of a danger can be implied, imputed, or constructive. Id.; see also Thompson v. Green Mountain Power Corp., 120 Vt. 478, 483 (1958). This Court has held that the Roman Catholic Diocese was not liable when a parish priest molested a young parishioner. See Kennedy v. The Roman Catholic Diocese of Burlington, Vermont, 921 F. Supp. 231 (D. Vt. 1996). In Kennedy, the only indication of anything untoward was "that certain individuals on one unspecified occasion complained that [the priest] spent too much time with plaintiff and her family." Id. at 234. In this case, no adult member of the church or community suspected that Rinaldi was molesting Doe. Doe argues that he told several friends, but these friends were also children, and were not in a position to make changes within the church. It is not alleged that any of the children told any adult. As such, the danger of Rinaldi molesting children in general or Doe in particular was not foreseeable.

Doe argues that knowledge of Rinaldi's actions can be imputed to the church through his wife, Judith.  He argues that a reasonable jury could assume that Judith knew of the abuse, some of which took place in the family home while she was present.  Because Judith was employed by the church as an administrator of the school, Doe argues that her knowledge would be imputed to the church.  (Paper 27 p. 14). Even if Judith's knowledge was imputed to the church, however, there is no evidence that she was aware of the abuse.  Doe did not depose Judith, and he has submitted no evidence beyond mere speculation that she knew of her husband's actions.  Doe himself testified that one of the incidents took place in the Rinaldi's living room when Judith was also present, but stated that he didn't think Judith noticed what was happening.  (Paper 28, Ex. 5, pp.50-54).  As such, there is no evidence that Judith was aware of the abuse, and mere speculation and conjecture is not sufficient to deny a motion for summary judgment.  See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d at 499.

Doe argues that "the unfortunate truth is that sexual abuse of minors by church clergy has become sufficiently widespread, as has social awareness of the problem, in

recent decades that 'it may fairly be regarded as (a risk) of (church) business, whether . . . committed in furthering it or not.'" (Paper 27 at 6).  Although awareness of sexual abuse has increased in recent decades, Doe is essentially arguing that any church whose employee molests a child is *per se* liable for the molestation.  A *per se* rule for liability would expand the scope of employer liability far beyond its current state under Vermont law.  In addition, it appears that the church defendants had at least an unwritten policy that no adult was to be alone with a single child. (Paper 28, Ex. 1 pp. 45-47).  Rinaldi disregarded this policy during the incident in his office, but his disregard for the policy is not sufficient to show negligence on the part of the church defendants.  As such, I recommend that summary judgment be GRANTED as to Count I.

    B.  <u>Breach of Fiduciary Duty</u>

    The church defendants next argue that they are entitled to summary judgment on Count II, Doe's claim for breach of fiduciary duty.  Doe argues that the church defendants' unwritten policies are evidence that they were aware of the risk of abuse by Rinaldi or any other church leader, and that a reasonable jury could find that the church defendants

knew or should have known that Rinaldi was violating these policies and abusing Doe.

It is unclear whether a cause of action for breach of fiduciary duty between a church and its congregants exists in Vermont.  Under Vermont law, a fiduciary relationship exists when one party is dependant on the other, and "reposed trust and confidence in, [the other] in the conduct of its affairs."  McGee v. Vermont Federal Bank, 169 Vt. 529, 530 (1999).  The Second Circuit has supported a jury finding that such a relationship existed between a church and one of its congregants under Connecticut law, but it appears that no Vermont court has held that a fiduciary relationship exists between church leaders and their congregation.  See Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 429-32 (2d Cir. 1999).

The existence of a fiduciary relationship imposes a duty of mutual good faith on the parties.  Cooper v. Cooper, 173 Vt. 1, 7 (2001).  The existence or non-existence of the relationship and corresponding duties is a question of law for the court to decide.  McGee, 169 Vt. at 530.  As the church defendants note, claims for breach of fiduciary duty generally involve fraud, bad-faith self-dealing, conflict of

interest, or a failure to disclose information.  See id. at 530-31; Cooper, 173 Vt. at 7-9.

In Martinelli, the Second Circuit did not hold that a fiduciary relationship existed generally between a church and its congregants.  Instead, the Second Circuit found that a reasonable jury could find that the church owed a fiduciary duty to a particular boy under the circumstances. Martinelli, 196 F.3d at 430.  In that case, the church discovered that a particular priest had assaulted a university student, and that the same priest had solicited a teenage boy, referred to as M.F.  Id. at 414.  M.F. had been a member of a small group of boys to whom the priest served as a spiritual advisor.  Id. at 414-15.  The plaintiff was also a member of that group of boys, and was molested by the priest in question.  Id. at 414.  After the church discovered the priest's history of molestation and solicitation of teenaged boys, it decided not to inform any other members of the group or their parents of the priest's actions.  Id.  The church's knowledge of the priest's history of abuse and its failure to disclose this knowledge served as the basis for the finding that a fiduciary relationship existed.

16

In this case, it is not necessary to decide whether Vermont law would permit a finding of a fiduciary relationship between the church defendants and Doe.  Even assuming such a relationship does exist, there is no evidence that the church defendants knew or had reason to know that Rinaldi had a propensity to molest young boys.  He had no criminal history of molestation, and the church defendants did not become aware of any incidents until Doe himself complained.  As such, the church defendants are not guilty of any bad faith in failing to reveal the danger Rinaldi posed to Doe; they simply did not know of any danger.  As such, I recommend that the Court grant summary judgment in favor of the church defendants on Count II.

C.  Negligent Supervision and Negligent Hiring and Retention

The church defendants next argue that they are entitled to summary judgment on Count III (Negligent Supervision) and IV (Negligent Hiring and Retention).  These claims are governed by Section 213 of the Restatement (Second) of Agency, which provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper

17

persons or instrumentalities in work involving
risk of harm to others: in the supervision of the
activity; or . . . in permitting, or failing to
prevent, negligent or other tortious conduct by
persons, whether or not his servants or agents,
upon premises or with instrumentalities under his
control.

Restatement (Second) of Agency § 213.  Liability for these

causes of action will exist only when all of the elements of

a tort of negligence exist.  Haverly v. Kaytech, Inc., 169

Vt. 350, 357 (1999).  In other words, Doe must prove that

the church defendants owed him a duty, they breached that

duty, Doe suffered injury, and the injury was proximately

caused by the church defendants' breach of duty.

As already discussed, the foreseeability of the harm is

relevant in determining whether there was a legal duty.  See

Kennedy, 921 F. Supp. at 234.  Again, there is no evidence

that the church defendants knew or should have known of

Rinaldi's propensity to molest young boys.  An employer is

under a duty to control his employees from intentionally

harming another only when he "knows or should know of the

necessity and opportunity for exercising such control."

Restatement (Second) of Torts § 317(b)(ii).  Because the

church defendants did not know of Rinaldi's propensities,

they were under no duty to protect Doe from Rinaldi's

18

volitional, criminal acts.  I therefore recommend that
summary judgment be granted in favor of the church
defendants on Counts III and IV.[4]

D.  <u>Punitive Damages</u>

Finally, the church defendants argue that they are
entitled to summary judgment on Count V (Punitive Damages).
Under Vermont law, a plaintiff is required "to demonstrate
that a defendant acted with malice in order to recover
punitive damages."  <u>Brueckner</u>, 169 Vt. At 129.  "It must be

---

[4] The church defendants also argue that the First
Amendment's Free Exercise Clause precludes a finding that
they negligently hired, supervised, or retained Rinaldi.
They base this on the holding of <u>Ehrens v. Lutheran Church</u>,
269 F. Supp. 2d 328, 332 (S.D.N.Y. 2003)("It is
constitutionally dubious for a court or jury to set a
standard of reasonable care for religious bodies which
maintain rosters of clergy eligibility for employment by
congregations.").  The church defendants fail to point out
that when the Second Circuit affirmed <u>Ehrens</u>, it expressly
declined to rule on this issue, affirming instead the
district court's finding that the plaintiff presented no
evidence that the church knew or should have known that the
minister had the propensity to engage in sexual assault.
<u>Ehrens v. Lutheran Church</u>, 382 F.3d 232, 236 (2004).  The
Second Circuit noted, however, that the district court had
failed to address the holding in <u>Martinelli</u> that "[t]he
First Amendment does not prevent courts from deciding
secular civil disputes involving religious institutions when
and for the reason that they require reference to religious
matters."  <u>Martinelli</u>, 196 F.3d at 431.  In any event, Doe
has failed to present any evidence that the church
defendants knew of Rinaldi's propensity to molest boys, and
therefore there is no need to reach the First Amendment
issue.

shown that there was actual malice.  This may be shown by conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights."  <u>Shortle v. Central Vermont Public Service Corp.</u>, 137 Vt. 32, 33 (1979).  In this case, Doe alleges that the church defendants exhibited the malice required for a punitive damages award by permitting Rinaldi to have unsupervised contact with Doe "when they knew that Rinaldi had a propensity for engaging in sexual contact with minors."  (Paper 1 at ¶ 17).  As already noted, there is no evidence that the church defendants knew of any such propensity.  In addition, the church defendants apparently had an unwritten policy against any adult spending time alone with a child.  (Paper 28, Ex. 1, pp.45-47).  As such, Doe has failed to present any evidence that the church defendants acted with malice, and I recommend that summary judgment be granted in favor of the church defendants on Count V.

## Conclusion

For the foregoing reasons, I recommend that the church defendants' motion for summary judgment (Paper 25) be GRANTED.

Dated at Burlington, in the District of Vermont, this 20th day of July, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).